# UNITED STATES DISTRICT COURT
# DISTRICT OF CONNECTICUT

---

LORI WELCH-RUBIN and DAVID WELCH-RUBIN,

        Plaintiffs,

-against-

SANDALS CORPORATION a/k/a SANDALS RESORTS INTERNATIONAL a/k/a SANDALS RESORTS d/b/a BEACHES TURKS & CAICOS RESORT & SPA and UNIQUE VACATIONS, INC.,

        Defendants.

---

Case No. 03 CV 00481 (MRK)

**TRANSMITTAL AFFIDAVIT IN SUPPORT OF DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

STATE OF NEW YORK   )
                              ) ss.:
COUNTY OF NEW YORK  )

       DAVID B. NEWMAN, being duly sworn, deposes and says:

       1.     I am a member of Sonnenschein Nath & Rosenthal LLP, counsel to defendants Sandals Resorts International, Ltd. and Unique Vacations, Inc. in the above-captioned action. I make this affidavit in support of defendants' motion to dismiss the complaint.

       2.     In particular, I make this affidavit to transmit to the Court true and correct copies of the following document, which is referenced in the Reply Memorandum of Law in Further Support of Defendants' Motion for Summary Judgment:

17441050\V-1

Exhibit A:   Excerpts from the March 29, 2004 Deposition of Lori Welch-Rubin.

*David B. Newman*

David B. Newman

Sworn to and subscribed before me
this 28th day of July, 2004

*Alessandra Lovren*

Notary Public

ALESSANDRA LOVREN
NOTARY PUBLIC, STATE OF NEW YORK
NO. 31-4981830
QUALIFIED IN NEW YORK COUNTY
COMMISSION EXPIRES MAY 20, 20 07

```
 1
 2            UNITED STATES DISTRICT COURT
 3               DISTRICT OF CONNECTICUT
 4
 5   LORI WELCH-RUBIN and            )
     DAVID WELCH-RUBIN,              )
 6                                   )
                 Plaintiffs,         ) 303 CV 00481
 7                                   ) (DJS)
             vs.                     )
 8                                   )
     SANDALS CORPORATION a/k/a       )
 9   SANDALS RESORTS INTERNATIONAL   )
     a/k/a SANDALS RESORTS d/b/a     )
10   BEACHES Turks & Caicos          )
     RESORT & SPA and UNIQUE         )
11   VACATIONS, INC.,                )
                                     )
12               Defendants.         )
     --------------------------------)
13
14
15
16       DEPOSITION OF LORI WELCH-RUBIN
17             New York, New York
18           Monday, March 29, 2004
19
20
21
22
23   Reported by:
24   KRISTIN KOCH, RPR
25   JOB NO. 1135
```

Page 2

                    March 29, 2004
                    9:45 a.m.


        Deposition of LORI WELCH-RUBIN, held
    at the offices of Sonnenschein, Nath &
    Rosenthal, LLP, 1221 Avenue of the
    Americas, New York, New York, before
    Kristin Koch, a Registered Professional
    Reporter and Notary Public of the State of
    New York.

Page 3

APPEARANCES:


    DOMBROSKI, KNAPSACK & HILLIS, LLC
    Attorneys for Plaintiffs
        129 Whitney Avenue
        New Haven, Connecticut 06510
    BY:  TERRI-ANN KNAPSACK, ESQ.



    SONNENSCHEIN, NATH & ROSENTHAL, LLP
    Attorneys for Defendants
        1221 Avenue of the Americas
        New York, New York 10020
    BY:  DAVID B. NEWMAN, ESQ.

Page 4

        IT IS HEREBY STIPULATED AND AGREED
    by and between the attorneys for the
    respective parties herein, that filing and
    sealing be and the same are hereby waived.
        IT IS FURTHER STIPULATED AND AGREED
    that all objections, except as to the form
    of the question, shall be reserved to the
    time of the trial.
        IT IS FURTHER STIPULATED AND AGREED
    that the within deposition may be sworn to
    and signed before any officer authorized
    to administer an oath, with the same
    force and effect as if signed and sworn
    to before the Court.



                    - oOo -

Page 5

LORI WELCH-RUBIN,
        called as a witness, having been duly
        sworn by a Notary Public, was examined and
        testified as follows:
EXAMINATION BY
MR. NEWMAN:
    Q.  Can you please state your full name
for the record.
    A.  Lori Welch-Rubin.
    Q.  What do you do for a living?
    A.  I am an attorney.
    Q.  Where do you practice?
    A.  At Engelman & Welch-Rubin in
New Haven, Connecticut.
    Q.  What type of practice do you have?
    A.  About half of what I do is appellate
work and the other half is litigation, and that
breaks down to probably half family and half
employment, consumer litigation, commercial,
other kinds of things.
    Q.  Do you take depositions in
connection with your litigation?
    A.  Yes, I do.
    Q.  You just have to wait until I finish

### Page 202

Welch-Rubin

Q. Have you ever done the outside work?
A. Yes.
Q. When was the last time you did outside work?
A. Probably five or six years ago.
Q. So that was long before you went to Turks & Caicos; correct?
A. Yes.
Q. When you clean the kitchen, tell me what you do.
A. Well, if there are dishes in the dishwasher, I take the dishes out of the dishwasher and put them in the cabinets. If there are dirty dishes in the sink, I take the dirty dishes from the sink and put them in the dishwasher and turn the dishwasher on. I wipe off the table, I wipe off the counters, wipe off the refrigerator.
Q. Do you make lunch for your children for school?
A. Rarely.
Q. Is that because they buy lunch at school or buy it elsewhere?
A. One gets lunch from school. He

### Page 203

Welch-Rubin

can't bring it. One, depending on what's on the menu, either has me make something or will get it at school, and the other one takes care of herself.
Q. When you bathe, whether it is in the bathtub or the shower, are you able to do that by yourself?
A. Yes.
Q. Was that true since March 2001?
A. I had help when I had the surgery and afterwards, but other than that, I do it myself.
Q. You had someone come to the house?
A. No. I had my husband help me or one of the kids would.
Q. But other than that, you have done it yourself in terms of bathing?
A. Yes.
Q. In terms of getting yourself dressed, you do that yourself?
A. For a very long time I had either my husband or one of my kids would put my bras on, because I can't reach my arm around to do it, and occasionally I still have them do it

### Page 204

Welch-Rubin

depending on how sore it is.
Q. In 2004 how often have you gotten assistance in that regard?
A. Maybe once every other week.
Q. How about 2003, how many times?
A. Probably the same. Maybe a little less than that.
Q. What about in 2002?
A. I was having it done. It probably was a full year before I did it, could do it myself.
Q. Is there anything currently in 2004 that you need assistance doing in terms of your grooming and taking care of your health needs?
A. No.
Q. In terms of the water sports staff at Beaches Turks & Caicos, do you know how they were trained?
A. No.
Q. Do you know what training they had?
A. Well, the SCUBA people were supposed to be certified and licensed or whatever, because that's what they told you, and other than that, just that they were -- you know,

### Page 205

Welch-Rubin

knew how to use the equipment and would show you how to use the equipment and things.
Q. Do you know what training the water sports people had?
A. I have answered that question. I said no.
Q. Do you know if they are certified?
A. My understanding was that the SCUBA people were certified.
    MR. NEWMAN: Can we take a break for a few minutes, please.
    (Recess was taken from 2:55 to 3:05.)
Q. Other than the SCUBA people, do you know what training any of the water sports people at Beaches Turks & Caicos had?
A. No.
Q. Did you ever ask anybody what training the water sports people at Beaches Turks & Caicos had?
A. Not that I recollect.
Q. Do you know if Unique Vacations was involved in training any of the water sports personnel?

Page 206

Welch-Rubin

1  A. I don't know.
2  Q. Do you know if the company or the entity known as Sandals Corporation had any involvement in training the water sports personnel at Beaches Turks & Caicos?
3  A. I would assume so, because they are employees.
4  Q. Taking away your assumption, do you have any personal knowledge or facts as to that?
5  A. All I know is that they were their employees.
6  Q. So you think the people who were water sports people at Beaches Turks & Caicos were employed by Sandals Corporation? That's your understanding?
7  A. Well, they were employed by Beaches and Beaches is part of the Sandals Corporation, as I understand it.
8  Q. Do you know who employs the personnel who work at the hotel called Beaches Turks & Caicos, the name of the company that employs them?
9  A. No, I just know that they are

Page 207

Welch-Rubin

Beaches employees.
Q. I am asking you whether you know the name of the employer who employs the people who work at Beaches Turks & Caicos.
A. I have answered the question.
Q. Can you answer it again, please?
MS. KNAPSACK: I believe she answered that no, she doesn't know --
Q. Would you care to adopt that?
A. I knew that they were Beaches employees. That's what I am assuming, because they had Beaches stuff on and they were Beaches employees.
Q. Do you know the name of the company that owns the hotel known as Beaches Turks & Caicos?
   I am not hearing anything. I don't hear an objection, I don't hear an answer.
MS. KNAPSACK: If you know.
A. I don't know.
Q. Do you know the name of the company, if any, that manages the hotel known as Beaches Turks & Caicos?
A. The literature that comes from them

Page 208

Welch-Rubin

says it's the Beaches Sandals Corporation and I believe it references an address in Florida.
Q. Is that all you know with regard to who manages the hotel that's known as Beaches Turks & Caicos?
A. I get newsletters -- I have gotten newsletters from them on occasion and they give you all these explanations of where their employees come from and what community service they do and those kinds of things and it's all under Sandals Beaches and it references a Florida address.
Q. I am trying to find out if you know the name of the company that manages the hotel known as Beaches Turks & Caicos. That's all.
A. I believe I have answered the question to the best of my ability, which is the newsletters that they send out of how the company -- about how their facilities are managed and the people who they employ comes from Beaches Sandals or Sandals Beaches, actually, and it has a Florida address on it.
Q. You think Sandals Beaches is the name of the company that manages the hotel?

Page 209

Welch-Rubin

A. I do not know the technical name.
Q. Do you know what a company called Sandals Resorts International does?
A. Other than that's one of the companies that's referenced in these various communications that I have gotten.
Q. Other than that, you don't know what they do; is that correct?
A. That's correct.
Q. Do you have any swimming certifications, like Red Cross, life saving, or any of those things?
A. Yes, but, I mean, it's a long time ago.
Q. Prior to going to the water sports facility to sign up for the snorkeling trip, had you ever been on that pier before?
A. No.
Q. Did you ever see the boat that ultimately you went onto prior to that?
A. No. I mean, it might have been out in the water, but I don't remember seeing it.
Q. Did you speak to anyone who had been on this snorkeling trip prior to your going

53 (Pages 206 to 209)

TSG REPORTING, INC.   212-702-9580

Page 210

```
 1          Welch-Rubin
 2   that day, the day of the incident?
 3       A.   At --
 4       Q.   At Beaches Turks & Caicos.
 5       A.   Yes, I did.
 6       Q.   Who did you speak with? It was a
 7   guest?
 8       A.   Yes, it was a guest.
 9       Q.   What did they say?
10       A.   They said it was wonderful.
11       Q.   Did you discuss with them anything
12   about getting on or off the boat?
13       A.   No. Just they had seen a lot of
14   fish and different kinds of things.
15       Q.   You indicated that when you were at
16   Beaches Negril, that was the year before?
17       A.   Yes.
18       Q.   When you went to Beaches Negril, you
19   went on a similar snorkeling trip; correct?
20       A.   Yes, but you got on the boat very
21   differently.
22       Q.   I just asked you whether you went on
23   a similar snorkeling trip.
24       A.   I actually was successful, because I
25   went on the snorkeling trip, which is not what
```

Page 211

```
 1          Welch-Rubin
 2   happened in Turks & Caicos.
 3       Q.   When you went on that boat, how did
 4   you get on the boat?
 5       A.   The boat pulled up very close to
 6   shore and you got on -- there was a ramp from
 7   the water to get on.
 8       Q.   When you say "a ramp," what kind of
 9   ramp was it?
10       A.   Like a portable bridge, for want of
11   a better description.
12       Q.   What shape is it?
13       A.   It was rectangle.
14       Q.   Was it like a box you stepped onto
15   to get onto the boat?
16       A.   No, my recollection was it was like
17   on an angle.
18       Q.   Was it curved or was it straight?
19       A.   Straight.
20       Q.   So it was something like at a
21   45-degree angle that you walked up onto the
22   boat?
23       A.   Yes, something like that. That is
24   my recollection.
25       Q.   Where was that placed for you to
```

Page 212

```
 1          Welch-Rubin
 2   step onto?
 3       A.   You got onto the back of the boat.
 4       Q.   Was the ramp put in the water?
 5       A.   I don't remember if it was in the
 6   water or close to the shore. You might have
 7   gotten your feet wet.
 8       Q.   Well, did you go directly from the
 9   shore onto this ramp and onto the boat?
10       A.   No.
11       Q.   The boat didn't pull along a dock?
12       A.   No, there was no dock. It didn't
13   have a dock. I actually think I went twice.
14       Q.   Have you seen your interrogatory
15   responses in this case?
16       A.   Yes.
17       Q.   Did you ever sign them?
18       A.   I think I did. I am sure I did. I
19   can't -- I know I read through them and I
20   signed them.
21       Q.   When you read through them, did you
22   suggest any changes to your counsel?
23       A.   I don't remember.
24       Q.   Did you prepare the responses or
25   your counsel?
```

Page 213

```
 1          Welch-Rubin
 2       A.   No, I did not prepare the responses.
 3       Q.   You said that you received a bill
 4   from the doctor in Turks & Caicos; correct?
 5       A.   Yes. We had to pay it that -- I
 6   think my husband paid by credit card. We had
 7   to pay before I got out of his office.
 8       Q.   When you went back to the hotel, did
 9   you ask to speak to anyone in management?
10       A.   No, I went to bed.
11       Q.   Did you speak to anyone in
12   management at any time about the incident --
13       A.   I did not.
14       Q.   Let me finish the question, please.
15   Did you speak to anyone in management at the
16   hotel after the incident but before you left
17   Beaches Turks & Caicos?
18       A.   No.
19       Q.   Did you husband, to your knowledge?
20       A.   I don't know.
21       Q.   You don't recall him reporting that
22   to you one way or the other?
23       A.   I just don't remember.
24       Q.   Did you have any verbal
25   communications with anyone at Beaches
```

54 (Pages 210 to 213)

TSG REPORTING, INC.    212-702-9580

## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

---------------------------------------x
:
LORI WELCH-RUBIN and DAVID
WELCH-RUBIN,                           :

        Plaintiffs,            :   Case No. 03 CV 00481 (MRK)

   -against-                         :   **AFFIDAVIT IN SUPPORT**
                                                          **OF DEFENDANTS' MOTION**
SANDALS CORPORATION a/k/a             :   **FOR SUMMARY JUDGMENT**
SANDALS RESORTS INTERNATIONAL
a/k/a SANDALS RESORTS d/b/a           :
BEACHES TURKS & CAICOS RESORT
& SPA and UNIQUE VACATIONS, INC.,     :

        Defendants.             :
---------------------------------------x

COUNTRY OF JAMAICA    )
                      )  ss.:
CITY OF MONTEGO BAY   )

    MERRICK FRAY, being duly sworn, deposes and says:

    1.    I am the Managing Director of Sandals Resorts International, Ltd. ("SRI"), one of the purported defendants in this action. I submit this Affidavit in support of the instant motion for summary judgment dismissing SRI from this action as it neither owns nor operates the hotel known as "Beaches Turks & Caicos Resort & Spa" ("Beaches Turks") where the incident is alleged to have occurred. I am personally familiar with the fact set forth herein.

    2.    The Complaint alleges that plaintiff Lori Welch-Rubin was injured while "attempting to board a Boat owned, operated and/or controlled by the defendants...". A copy of the Complaint is annexed hereto as Exhibit A.

    3.    The Complaint names as a defendant "Sandals Corporation a/k/a Sandals Resorts International a/k/a Sandals Resorts d/b/a Beaches Turks & Caicos Resort & Spa".

174244901\V-1

4.  There is no such entity as "Sandals Corporation". "Sandals" is a tradename used in connection with a group of hotels.

5.  The Complaint, paragraph 3, asserts that "Sandals Corporation" is and was incorporated in Florida and has a principal place of business in Florida. There is <u>no</u> such entity incorporated in Florida. There is <u>no</u> such entity with principal place of business in Florida. In fact, there is <u>no</u> such entity as "Sandals Corporation".

6.  The Complaint also asserts that "Sandals Corporation" is known as "Sandals Resorts International". There is no entity known as "Sandals Resorts International". There is an entity known as Sandals Resorts International, Ltd., which is a Jamaican limited liability company which is not incorporated in Florida and has no place of business in Florida. Sandals Resorts International, Ltd., the limited liability company of which I am Managing Director, does <u>not</u> own the hotel which trades under the name "Beaches Turks & Caicos Resort & Spa" where plaintiff Lori Welch-Rubin contends she was injured. Likewise, Sandals Resorts International, Ltd. does not operate the hotel which does business under the tradename Beaches Turks & Caicos Resort & Spa.

7.  The Complaint further alleges that "Sandals Corporation" also known as "Sandals Resorts International" is also known as "Sandals Resorts". There is no entity known as "Sandals Resorts". "Sandals Resorts" is a tradename for a group of all-inclusive hotels which do business under the name "Sandals". There are 11 hotels throughout the Caribbean which do business under the tradename "Sandals". These hotels are individually owned and managed.

8.  Contrary to the Complaint, there is no corporation in Florida under the name "Sandals Resorts" and as such, it cannot have a principal place of business in Florida. In fact, there is no such entity.

17434490\V-1

- 2 -

9.  Finally, the Complaint states that "Sandals Corporation" is also known as Sandals Resorts International which is also known as Sandals Resorts which is doing business as "Beaches Turks & Caicos Resort & Spa". There is no corporate or other entity known as "Beaches Turks & Caicos Resort & Spa". That is a tradename for a hotel in the country of Providenciales. That resort is not owned or operated by any of the parties to this lawsuit. That hotel is owned by an entity known as The Bay Hotel and Resort, Ltd. It is managed by a company called Royal Bay Resort and Villas, Ltd. Neither of those parties have been named as defendants in this lawsuit or to my knowledge served with the pleadings.

10. In their Answer, defendants indicated in the opening paragraph that "Sandals Corporation" was improperly named. In addition, the Sixth Affirmative Defense states that "defendants do not own, lease, manage or operate the hotel or premises where plaintiffs were allegedly injured."

11. Paragraph 17 of the Answer, entitled Seventh Defense states that "defendants do not manage, control, or direct the activity which resulted in the alleged injuries."

12. To my knowledge and information, plaintiffs have never taken the depositions of defendants or sought to determine the identity of the entities which own and operate the hotel where plaintiff Lori Welch-Rubin was allegedly injured.

WHEREFORE, it is respectfully requested that defendants' Motion for Summary Judgment be granted and that the Complaint be dismissed in its entirety, together with an award of costs, disbursements and such further relief as the court deems proper.

_____
MERRICK FRAY

Sworn to before me this
22nd day of June, 2004

_____
Notary Public

- 4 -

17474490v.1